UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
UNITED STATES OF AMERICA,                     :
                                              :
                                              :          26 Cr. 9 (PGG)
                                              :
        - against -                           :          ORDER
                                              :
MIGUEL TORRES,                                :
LORNE JOHNSON, and                            :
JAIDEN RAMIREZ,                               :
                                              :
                        Defendants.           :
------------------------------------------------------------------X

**GARY STEIN, United States Magistrate Judge:**

        At a conference on March 4, 2026, the Honorable Paul G. Gardephe rejected

the Government's proposed protective order governing discovery in this case.  (Dkt.

No. 65, Transcript of Proceedings, Mar. 4, 2026 ("Tr.")).  On March 10, 2026, the

Government proposed a modified protective order (the "Modified Protective Order").

(Dkt. No. 62).  Defendants Miguel Torres and Lorne Johnson have not objected to

the Modified Protective Order, but Defendant Jaiden Ramirez, in a letter filed on

March 17, 2026, has objected.  (Dkt. No. 67).  For the reasons set forth below, the

Government's motion for entry of the Modified Protective Order is **GRANTED IN**

**PART** and **DENIED IN PART**.[1]

## LEGAL STANDARD

        The legal principles governing the Government's motion are not disputed and

were summarized in Judge Gardephe's oral ruling during the March 4 conference.

_____

[1] On March 12, 2026, Judge Gardephe referred the Government's motion to the undersigned.  (Dkt.
No. 63).

(*See* Tr. at 3:15-4:9; Dkt. No. 44 at 2; Dkt. No. 52 at 2).  Under Federal Rule of Criminal Procedure 16(d)(1), the court may, "for good cause," issue a protective order for materials produced during discovery.  Fed. R. Crim. P. 16(d)(1); *see United States v. Smith*, 985 F. Supp. 2d 506, 522 (S.D.N.Y. 2013) ("Under the explicit terms of Rule 16(d), 'good cause provides the basis to enter a protective order.'" (quoting *United States v. Bulger,* 283 F.R.D. 46, 52 (D. Mass. 2012))).  The party seeking the protective order bears the burden of showing good cause.  *Id.* at 522-23.

To establish good cause, a party must show that "'disclosure will result in a clearly defined and serious injury.'"  *Id.* at 523 (quoting *In re Terrorist Attacks on September 11, 2001,* 454 F. Supp. 2d 220, 222 (S.D.N.Y.2006)).  "A finding of harm 'must be based on a particular factual demonstration of potential harm, not on conclusory statements.'"  *Id.* (quoting *United States v. Gangi,* No. 97 Cr. 1215, 1998 WL 226196, at *2 (S.D.N.Y. May 4, 1998)).  "'Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing.'"  *Id.* (quoting *United States v. Wecht*, 484 F.3d 194, 211 (3d Cir. 2007)).  Further, the court must "ensure that the protection afforded to discovery information is no broader than is necessary to accomplish the proffered goals of the protective order."  *Id.* at 524 (cleaned up).

## DISCUSSION

In rejecting the Government's original proposed protective order, Judge Gardephe described it as a "blanket protective order" that restricted defense counsels' use of all discovery provided by the Government in this case.  (Tr. at 4:10-

14).  Judge Gardephe found that the Government had failed to "identify in the proposed order the nature of the material it intends to disclose," nor had it "attempt[ed] to demonstrate how harm could result if a protective order is not issued." (*Id.* 4:14:17).  As a result, the proposed protective order "in its current form is overbroad." (*Id.* at 14:2-3).

In addition, Judge Gardephe found that the proposed protective order was flawed in a second respect.  It did not contain language affirmatively stating that Defendants and defense counsel could "share discovery material with prospective witnesses or others with relevant knowledge" or, more broadly, "use it unencumbered for the purposes of defending the case." (*Id.* at 4:18-24, 5:14-18).  Therefore, the proposed order presented "a risk of improperly chilling defense counsels' obligation to properly investigate the case." (*Id.* at 14:3-5).

The Government argues that the Modified Protective Order, attached as Exhibit A to its letter motion (Dkt. No. 62-1 ("MPO")), addresses the Court's concerns.  First, the Modified Protective Order now "expressly lists the few categories of materials for which the Government is requesting limited restrictions against public disclosure," which will be defined as "Confidential Material." (Dkt. No. 62 at 1; *see* MPO ¶ 3).  Second, the Modified Protective Order now expressly states that Confidential Material "may be used by the defense for purposes of defending the action" and that "in defending this action, the defense may share Confidential Material with prospective witnesses or others with relevant knowledge or information concerning the case." (Dkt. No. 62 at 1-2; *see* MPO ¶ 4).

Taking up the second issue first, I agree that the Modified Protective Order adequately cures the concerns expressed by Judge Gardephe in relation to the potential chilling effect on defense counsel's use of discovery materials. The Modified Protective Order now includes language affirmatively stating that defense counsel may use Confidential Material for purposes of defending the action. Ramirez, the only defendant who objects to entry of the Modified Protective Order, does not contend otherwise.

Ramirez does, however, vigorously dispute that the Government's modifications cure the Court's concerns regarding overbreadth, and he opposes entry of any protective order in this case. Ramirez argues, *inter alia*, that this is an ordinary gunpoint robbery case that could have been prosecuted in state court where the same discovery material would have been turned over to the defense without a protective order. (Dkt. No. 67 at 1, 4). Ramirez also argues that the Government has failed to establish good cause for entry of the Modified Protective Order and offers "only broad allegations of harm, unsubstantiated by specific examples or articulated reasoning," which are insufficient. (*Id.* at 1, 4-7).

The Court begins by noting that, despite the Government's contention that it has now limited the scope of Confidential Material to "a few categories," the Modified Protective Order remains quite broad. Paragraph 3 allows the Government to designate as Confidential Material five categories of information: (i) body-worn camera ("BWC") footage from cameras worn by NYPD officers; (ii) surveillance footage from the location of the robbery; (iii) "other materials compiled

4

by the NYPD and Federal Bureau of Investigation in connection with the investigation of this matter"; (iv) records obtained from the extraction of cellular devices recovered in connection with Defendants' arrests; and (v) records obtained from various third parties that contain personally identifying information ("PII") about any individual.  (MPO ¶ 3).  While categories (i), (ii), (iv) and (v) are reasonably limited in scope, category (iii) is not.  Materials compiled by the NYPD or FBI "in connection with the investigation of this matter" is synonymous with *all* investigative materials in this case.  If there is a significant category of Rule 16(a)(1)(E) discovery that would not be eligible for designation under the Modified Protective Order, the Government does not identify it.[2]

With that background, the Court proceeds to address each of the five categories of materials *seriatim*.

*BWC Footage*.  The Government argues that a protective order is needed because the BWC footage contains images of victims and witnesses who spoke with NYPD officers about relevant events in this case, including the owners of a car that Defendants allegedly stole and used in the commission of the robbery, as well as individuals who told officers about Defendants' alleged flight and the location of firearms.  (Dkt. No. 62 at 2; Dkt. No. 44 at 5).  Courts have recognized that protecting the privacy interests of third parties may constitute good cause for prohibiting defendants from more widely disseminating BWC footage beyond what

---

[2] The only materials the Government has identified that would not be eligible for designation under the Protective Order remain "records concerning the defendant's criminal history, photographs of the recovered Firearms and ammunition, and charging documents in this case."  (Dkt. No. 44 at 4 n.1). None of those materials can fairly be described as "confidential."

is necessary to defend against the Government's charges. *See, e.g.*, *United States v. Palacio*, No. 25 Cr. 661 (VSB), 2026 WL 575322, at *2 (S.D.N.Y. Mar. 2, 2026) (holding that "the Government has established the requisite good cause under Rule 16" for a protective order for BWC footage that "would implicate the privacy interests of a third party"); *United States v. Johnson*, 314 F. Supp. 3d 248, 257 (D.D.C. 2018) (entering protective order for BWC footage given, *inter alia*, "body-worn camera footage is likely to contain sensitive information in which witnesses and others depicted on the footage have a legitimate privacy interest"); *see also* Tr. 5:24-6:2 ("It may be that certain discovery to be produced by the government in this case does implicate the privacy interests of victims and witnesses such as body-worn camera footage showing faces of victims of the robbery[.]"); *id.* at 13:10-12 ("The government's interest in protecting the victims and witnesses in this case has long been held to justify protective orders.").

At the March 4 conference, Judge Gardephe noted that the Government had not demonstrated that "redacting personal identifying information, blurring images in videos that include faces of victims or witnesses, and designating specific materials as 'sensitive' and 'confidential' would be unduly burdensome in the context of this very simple and straightforward case." (Tr. at 13:17-22). The Government's March 10 letter does not directly address this point, but the Modified Protective Order would designate this specific material as "Confidential Material," and the Government states that, absent a protective order, it would need to engage in "more extensive blurring of all third parties" in the BWC footage. (Dkt. No. 62 at

6

2).  Given the risks that uninhibited public disclosure of the BWC footage would identify victims and witnesses (even with blurring), and the interest in facilitating prompt disclosure of these materials to Defendants, the Court finds that the Government has sufficiently demonstrated good cause as to this category of discovery material.

*Surveillance Footage.*  A similar analysis applies to the surveillance camera footage from the scene of the parking garage where the robbery took place on September 13, 2025.  The Government contends, and the Criminal Complaint in this case confirms, that the surveillance footage depicts the robbers' interactions with a victim of the robbery, an employee of the parking garage.  (Dkt. No. 42 at 5; Dkt. No. 1, Complaint, ¶¶ 5.a, b., c., d.).  As with the BWC footage, the interest in protecting the privacy of third parties such as victims is sufficient to establish good cause for a protective order with respect to the surveillance footage.

*"Other" Investigative Materials.*  Although the Government does not specify what material is encompassed by this catch-all category, its prior submission indicates that it includes records from the NYPD Electronic Case Management System ("ECMS") and "[s]imilar internal reports and records" from the FBI.  (Dkt. No. 44 at 4).  The Government contends that the ECMS and FBI records reveal "investigative methods, tools, and techniques" of law enforcement that "would jeopardize future law enforcement investigations if disseminated to the public." (*Id.*).  At the March 4 conference, however, Judge Gardephe noted that the Government "does not suggest that disclosure of the materials in this case would

7

impede any particular ongoing investigation" and concluded that the Government had not shown that "a blanket protective order is necessary here to protect the law enforcement methods that were used."  (Tr. at 12:6-8, 20-22).

The Government's March 10 letter does not fill this gap.  Indeed, it does not specifically mention the ECMS or FBI records, or the need to protect law enforcement investigative methods or investigations.  The Court thus finds that the Government has failed to establish that public disclosure of these records would result in "clearly defined and serious injury," *Smith*, 985 F Supp. 2d at 523 (citation omitted), to any law enforcement interest.  Accordingly, the Government has not met its burden of showing good cause for producing material in this category pursuant to a protective order.  *See United States v. White*, No. 24 Cr. 300 (DEH), 2024 WL 2801987, at *2 (S.D.N.Y. May 31, 2024) (finding that "the Government's broad assertions as to essentially all law enforcement records are insufficient at this stage" to establish good cause justifying a protective order as to such records); *United States v. Hoskins*, No. 20 Cr. 399 (PGG) (S.D.N.Y.), Dkt. Nos. 9 at 4, 23 at 1 (entering protective order limited to "Confidential Information that may (i) affect the privacy interests of individuals; or (ii) expose sensitive personal information," despite Government's request for broader order extending to "internal law enforcement records").

*Cellphone Records*.  This category concerns records obtained from "cellular devices recovered in connection with the arrest of the defendants in this case." (MIO ¶ 3).  Based on the Government's submissions, this refers to a single cellphone

8

that the Government contends belongs to Ramirez. (Dkt. No. 44 at 5). The Court sees no reason why Ramirez himself should be restricted from disclosing information extracted from his own cellphone. And indeed, the Modified Protective Order provides that "[t]his Order places no restrictions on a defendant's use or disclosure of ESI or other Confidential Material that originally belonged to the defendants." (MPO ¶ 11). However, to the extent that Ramirez's co-Defendants are provided with information extracted from his cellphone, the Court finds that good cause exists for a protective order as to that material. *See White*, 2024 WL 2801987, at *1 (finding that good cause existed for a protective order governing information extracted from cellphones belonging to individuals other than the defendant).

*Records Containing PII.* Beyond stating that it is in possession of records from Apple related to an iCloud account belonging to Ramirez, and referring to other, unidentified records from AT&T (Dkt. No. 44 at 4, 5), the Government does not identify what "records obtained from various third parties" are embraced by this category. Nor does the Government identify what types of PII are involved, who the PII belongs to, what the volume of such information is, or how burdensome it would be to redact the PII.

There is a legitimate interest in protecting PII from public disclosure. Protective orders have been issued where there is a large volume of records containing PII and it would be unduly burdensome for the Government to have to redact the PII. *See, e.g., United States v. Gendron*, No. 22 Cr. 109V(Sr), 2023 WL 4530591, at *1 (W.D.N.Y. July 13, 2023) (protective order entered in complex case

where discovery was "voluminous" and "many of these materials and documents include personally identifiable information (PII)"); *United States v. Gallo*, No. 2:24-cr-712 (BRM), 2025 WL 384276, at *3 (D.N.J. Feb. 4, 2025) (good cause existed for protective order to "facilitate the exchange of information that will undisputably contain a large quantity of PII"). By contrast, courts have required the Government to made redactions where "only a small subset of disclosure material" is involved. *United States v. Baker*, No. 20 Cr. 288 (LJL), 2020 WL 4589808, at *3 (S.D.N.Y. Aug. 10, 2020); *see also id.* (noting that while redacting documents "may be one of the less pleasant aspects of modern law practice," it is also "one of the more prevalent aspects").

At the March 4 conference, Judge Gardephe indicated on more than one occasion that the Government had not demonstrated why "redacting personal identifying information . . . would be unduly burdensome in the context of this very simple and straightforward case." (Tr. at 13:17-22; *see also id.* at 7:14-19 ("the government has not explained why redactions and confidentiality designations are insufficient to protect that information [PII]"); *id.* at 12:22-25 ("the government has not explained why it cannot accomplish the same goal by redacting sensitive information and designating certain materials as confidential")). In its March 10 letter, the Government continues to fail to provide any such explanation. If the Government had at least provided the Court with some indication of the volume of material that would need to be redacted, the Court might have a basis for finding good cause for a protective order as to this category of information. But the

Government has not done so.  It has not even identified any third-party records containing PII with the exception of Ramirez's iCloud account, and as to those records, the Court has no sense of how difficult it would be to redact any PII. Accordingly, the Government has not met its burden as to this category of material. *See Smith*, 985 F. Supp. 2d at 530 (denying request for protective order where Government did not provide information to enable the court to determine, *inter alia*, "whether redactions to the discovery might alleviate the Government's concerns").

The Court has considered Ramirez's objections to the Modified Protective Order, to the extent still relevant given the rulings above, and finds them unpersuasive.  Ramirez's principal argument is that the same discovery materials would have been provided without a protective order had this case been prosecuted by the District Attorney's Office.  But New York state courts have indicated a willingness to issue protective orders, pursuant to N.Y. Crim. P. § 245.70, to safeguard against disclosure of BWC footage and surveillance video.  *See, e.g.*, *People v. Brown*, 181 A.D.3d 958, 122 N.Y.S.3d 120, 122 (2d Dep't 2020) (noting issuance of protective order allowing district attorney to withhold production of images from surveillance video "that would reveal the identity of the witnesses"); *People v. Robinson*, 81 Misc. 3d 303, 193 N.Y.S.3d 883, 892 (Crim. Ct. Kings Cnty. 2023) ("[I]f the People believed that the BWC camera footage should not be disclosed, the proper procedure would have been to seek a protective order pursuant to CPL 245.70.").  The Court is not in a position to accept at face value Ramirez's

11

assertion that no protective order would have been sought or entered in this case had it been prosecuted by the state.

In any event, this case is not being prosecuted by the state, but in federal court, subject to the rules applicable in federal criminal proceedings. It is well settled that good cause may be found for the issuance of a protective order under Rule 16(d)(1) in order to protect the privacy interests of victims, witnesses, and other third parties. *See United States v. Jackson*, No. 21 Cr. 537 (LTS), 2022 WL 582700, at *2 (S.D.N.Y. Feb. 25, 2022) (good cause exist for protective order where disclosure would "compromis[e] the 'privacy interests of innocent third parties'" (quoting *Smith*, 985 F. Supp. 2d at 524)). To the extent that good cause exists in this case for materials to be protected by the Modified Protective Order, the fact that the practice in similar cases brought in state court is for the District Attorney to provide such materials without a protective order (if that is indeed a fact) would not be a basis for declining to issue a protective order here.

Equally unavailing is Ramirez's argument that it would be "ironic" for the Government to designate BWC footage as confidential when, according to Ramirez, the very purpose of having NYPD officers wear body cameras is to "'promote greater transparency during encounters with the public in order to build community trust and enhance law enforcement efforts.'" (Dkt. No. 67 at 6 (quoting NYPD Police Encounters, available at https://www.nyc.gov/site/nypd/about/about-nypd/police-encounters.page)). In some instances, as here, BWC footage will capture victims, witnesses, and other third parties who have a legitimate privacy interest in

12

avoiding public dissemination of their activities.  Ramirez's claim that he is the only one who could have a legitimate interest in such footage simply ignores the nature of the BWC footage in this case and the privacy interests of other individuals.  (*See id.* (arguing that "[i]f Mr. Ramirez decides to forgo his own privacy and publicly post embarrassing body-worn camera footage of his arrest to illuminate public policy encounters, he has every right to do so")).

Ramirez also points to certain federal cases in which no protective order was issued even though BWC and/or surveillance footage was apparently involved.  (*See id.* at 6-7).  But Ramirez does not claim that the footage in those cases captured images of victims or witnesses; indeed, the vast majority of them were felon-in-possession cases where the Government either did not seek a protective order or claim that one was needed to protect the interests of victims or witnesses.  For example, in *United States v. White*, *supra*, a firearms possession case upon which Ramirez relies, the Government did not argue that production of BWC footage should be subject to a protective order because it contained images of victims or witnesses.  Rather, its sole argument was that the BWC footage would reveal law enforcement investigative methods, tools, and techniques.  (*White*, No. 24 Civ. 300, Dkt. No. 9 at 5).  The Court is not relying on this rationale for finding good cause as to the BWC footage and, as noted, has found this rationale insufficient to warrant protection as to the ECMS and FBI investigative records in this case.

## CONCLUSION

For the reasons set forth above, the Government's motion for entry of the

Modified Protective Order is **GRANTED IN PART** and **DENIED IN PART**.  The

Government shall submit a revised Protective Order in accordance with this Order

by no later than April 14, 2026.

      **SO ORDERED.**

Dated:      New York, New York
             April 7, 2026

                    GARY STEIN
                    United States Magistrate Judge

14